LAW et al. v. VILLAGE OF MARTHA-VILLE.

No. 6095.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1940.

J. D. Rusca, of Natchitoches, for appellants.

Julian E. Bailes, of Natchitoches, for appellee.

HAMITER, Judge.

Plaintiffs seek in this cause the nullification of a proclamation issued by the governing authority of the Village of Marthaville, Louisiana, respecting the results of an election held for the purpose of determining whether or not that political subdivision should be dissolved and its charter surrendered. From a judgment rejecting their demands as of nonsuit they appealed.

According to a written stipulation entered into by counsel for the several litigants, the facts are correctly detailed in plaintiff's petition and in a filed statement. It is therein shown that the governing authority of the Village of Marthaville, on being appropriately petitioned, called an election to permit the qualified voters and taxpayers thereof to determine the proposition, "Shall the charter of the Village of Marthaville be surrendered and the corporation dissolved?"

The election was held on August 2, 1938. At its conclusion the commissioners counted the ballots in number and amount and certified the results of their findings as follows:

"For dissolution of the corporation and surrendering its charter:

"Vote in number ...        18
"Vote in property valuation...$11,455.

"Against the proposition:

"Vote in number ...        8
"Vote in property valuation...$8,260."

The proposition was favored by a majority both in numbers and amount, according to that tabulation.

The following day the Mayor and Aldermen met for the purpose of canvassing the results of the election and found that some of the property voted in favor of the proposition did not appear on the last filed assessment rolls, being for the year 1937, in the names of the respective persons voting it; and they rejected the votes that concerned such property. As the result of this rejection, the property valuation voted against the proposition appeared greater than that in its favor; and a proclamation was issued by the governing authority declaring that the proposition had been defeated.

Although the disallowed property was not assessed on the 1937 rolls to the persons voting its valuation, it was actually owned by them at the time of the election on August 2, 1938; and most of such property was properly assessed on the then completed but unfiled 1938 rolls.

The procedure relative to the surrendering of charters and the dissolution of municipal corporations having populations of not more than 2500, to which group the Village of Marthaville belongs, is found in Act 224 of 1934. This statute, in Section 1 thereof, provides for the ordering of an election by the governing authority when presented with a petition praying for the surrender and dissolution, signed by a majority in number and amount of the property tax payers of the community qualified to vote under the constitution and laws of this state. It further states that:

"Section 3. * * * only property taxpayers qualified as electors under the Constitution and laws of this State shall be entitled to vote at an election held hereunder. The qualifications of such taxpayers as voters shall be those of age, residence, poll tax payment and registration for voting, as prescribed by the Constitution and laws of this State without regard to sex. There shall be no voting by proxy.

"Section 4. The Registrar of Voters shall furnish to the election Commissioners appointed to hold such elections, a list of the taxpayers entitled to vote at such election, together with the valuation of each taxpayer's property, as shown by the assessment roll last made and filed prior to such election; provided, that if any taxpayer's name and valuation of property shall be omitted from such list or erroneously entered thereon, the Commissioners of the election may receive affidavits of such taxpayer's right to vote and the proper assessed valuation of his property, which affidavits shall be attached to such taxpayer's ballot. No defect or irregularity in, or omission from, the list of voters furnished by the Registrar of Voters hereunder shall affect the validity of the election, unless it be established that voters were thereby deprived of votes sufficient in number and amount to have changed the result of the election."

The question presented for determination in this controversy arises under these quoted statutory provisions. It is: May a person vote property owned by him at the time of the election but with which he is not assessed on the tax rolls last made and filed prior to such election?

It is our belief that Peck et al. v. Board of Directors of Public Schools for Parish of Catahoula, 137 La. 334, 68 So. 629, 631, furnishes the correct answer to the question, which is in the affirmative. Therein the court was called upon to give the meaning of the term "property taxpayer" as used in Sections 4 and 6 of Act No. 256 of 1910, and in Article 281 of the Louisiana Constitution of 1898. The referred to sections of the 1910 act, from which the aforequoted provisions of the 1934 statute obviously were taken, read in part:

"That the property taxpayers, qualified as electors under the Constitution and laws of this State, shall be entitled to vote at such elections, the qualifications of such taxpayers as voters to be those of age, residence and registration as voters. * * *

"That it shall be the duty of the registrar of voters to furnish the commissioners appointed to hold such elections with the lists of taxpayers entitled to vote in person or by proxy at such elections, together with the valuation of each taxpayer's property as shown by the assessment roll last made and filed prior to each election; provided that, when any taxpayer's name and valuation of property shall be omitted from such list or erroneously entered thereon the commissioners of election shall have authority to receive affidavits of

such taxpayer's right to vote and of the proper assessed valuation of his property, which affidavit shall be attached to such taxpayer's ballot."

The mentioned constitutional provision of 1898 was in substance incorporated in the Constitution of 1921 under Article 14, Section 14(a).

As the organ of the court in the Peck case, Justice Provosty stated:

"In regard to the legality of the votes, it is contended by plaintiff that the property qualification of the voters is to be determined solely and exclusively by the assessment roll. With that contention the writer of this opinion is in full accord, deeming it to be clear that the said Act 256, in its sections 4 and 6 so requires, and that the requirement is constitutional, since the constitutional requirement (article 281) that the voter be a property tax payer is easily susceptible of the interpretation that he must be so according to some method to be adopted by the Legislature for determining whether he is so or not. * * *

"But the majority of the court think otherwise, being of opinion that by the term 'property tax payer,' the Constitution means a person who is such at the moment he or she offers to vote, and is such not ostensibly merely or, in other words, according to the assessment roll, but in reality; that in the intendment of the Constitution those only shall vote who are to pay the tax, who would be voting the tax upon themselves, and not upon others; those only who are really owners of the property at the time it is voted."

Our search of the jurisprudence has failed to disclose any decision overruling this majority holding, either expressly or by implication; and we think it is supported by reason and logic.

A person should be allowed to vote at a tax election the property that he then owns, whether assessed to him or not, for it is affected by the results of the election. But it is not proper to permit one to vote property that he has previously sold and does not then own, although it was assessed to him on the last filed tax rolls; and the Supreme Court has so held. Bradford et al. v. Grant Parish School Board, 154 La. 242, 97 So. 430.

It is true that the above cited cases, as defense counsel points out, deal with elections held for the purpose of voting school taxes and they do not specifically relate to the statute under consideration and to the surrender of charters of municipalities. This distinction, we think, is of no importance, in view of the similarity of the statutory and constitutional provisions involved, and also because all relate to elections having to do with the imposition of taxes, either directly or indirectly.

It is therefore our opinion that the rejection by the governing authority of the above discussed property valuations, and the votes cast thereon, was contrary to law; and that the demands of plaintiffs should not have been nonsuited.

Accordingly, the judgment of the district court is reversed and set aside, and there is now judgment in favor of plaintiffs and against the defendant annulling and cancelling the above mentioned proclamation of the Mayor and Aldermen of date August 3, 1938, declaring that the results of the election held on August 2, 1938, favored the submitted proposition, and decreeing that the charter of the Village of Marthaville has been surrendered and the corporation dissolved.