NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

NECIA ROBBINS, *Petitioner/Appellee*,

*v.*

ROBERT TOWNSEND, *Respondent/Appellant*.

No. 1 CA-CV 16-0417 FC
FILD 2-27-2018

Appeal from the Superior Court in Mohave County
No. L8015DO201407138
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Steven Clark, P.C., Phoenix
By Steven G. Clark
*Co-Counsel for Petitioner/Appellee*

The Murray Law Offices, P.C., Scottsdale
By Stanley D. Murray
*Co-Counsel for Petitioner/Appellee*

Law Office of John C. Churchill, Parker
By John C. Churchill
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge Samuel A. Thumma joined.

---

**C R U Z**, Judge:

¶1         Robert Townsend ("Husband") appeals the superior court's Decree of Dissolution ("Decree").

**FACTUAL AND PROCEDURAL HISTORY**

¶2         Husband and Necia Robbins ("Wife") married in 2004. In 2008, with the advice of attorney Steve Beihn, Husband and Wife created a marital trust. Wife filed her petition for divorce in 2014. Wife and Husband disputed three main issues: (1) whether a Kiowa commercial property was community property; (2) whether Wife's Boeing Retirement Account (the "Boeing Account") was community property; and (3) the value of a shared Montana home.

¶3         After a two-day trial, the superior court entered the Decree in February 2016. The court found the Kiowa property was conveyed to the parties as community property. The court found that, regardless of Husband placing the Kiowa property in the marital trust, the evidence demonstrated that the intent was for the Kiowa property to be community property, and that Husband did not prove by clear and convincing evidence that it was to remain his sole and separate property. The court found that the Boeing Account was Wife's sole and separate property. Husband and Wife agreed that Wife would receive the Montana home and that Husband would receive the Lake Havasu City home. Wife presented an appraisal valuing the Montana home at $240,000. Husband estimated the value was closer to $310,000 to $340,000, and Husband's friend, Gordon Brown, testified that he had bought a smaller, but newer, home for $275,000. Given the competing evidence and testimony, the court found Wife's appraisal to be the most credible, and found the Montana home was worth $240,000.

¶4         Husband unsuccessfully moved for a new trial and for reconsideration and then timely appealed the denial of those motions.

After discovering the Montana home had suffered water damage at the time of the court's decree, Husband moved for relief from judgment, and appealed the denial of said motion. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A).

## DISCUSSION

I.      The Kiowa Property

**¶5**          Husband argues the Kiowa property should have been awarded to him as his sole and separate property.

**¶6**          We review the denial of a motion for new trial for an abuse of discretion. *Pullen v. Pullen*, 223 Ariz. 293, 296, ¶ 10 (App. 2009). However, the superior court's characterization of property as community or separate is a conclusion of law we review *de novo*. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000); *see also Pullen*, 223 Ariz. at 295-96, ¶ 9. We view the evidence and all reasonable inferences in the light most favorable to sustaining the superior court's ruling regarding whether property is community or separate. *Valladee v. Valladee*, 149 Ariz. 304, 307 (App. 1986).

**¶7**          Property acquired before marriage is characterized as separate property, and the court must assign each spouse their sole and separate property. A.R.S. §§ 25-213(A), -318(A). Property acquired during marriage is presumed to be community property. A.R.S. § 25-211(A); *Somerfield v. Somerfield*, 121 Ariz. 575, 578 (1979). This presumption may be rebutted by clear and convincing evidence. *Armer v. Armer*, 105 Ariz. 284, 287 (1970). If the property acquired during marriage was acquired by gift, devise, or descent, then the property is characterized as separate. A.R.S. § 25-213(A).

**¶8**          In 1995, Husband's parents created the Townsend Trust, named Husband and his brother, Wayne Townsend, as beneficiaries and thereafter placed real property in the trust, including the Kiowa property. In 2007, Wayne, as trustee, executed a deed conveying to Husband and Wife, in exchange for just consideration, an undivided 50% interest in the Kiowa property "as community property with right of survivorship." Husband and Wife accepted that conveyance in writing, signed by both Husband and Wife, stating "it is their intention to accept [the] conveyance as community property with right of survivorship." Husband and Wife later signed a lease extension to the Kiowa property, stating their ownership rights were held jointly.

3

**¶9** The superior court found the evidence established that Husband and Wife acquired the property during the marriage as community property; not that Husband had acquired the property as his sole and separate property, and that any potential transmutation occurred as a result of the property being placed into a marital trust Husband and Wife created.[1] The court denied Husband's post-decree motions for new trial and reconsideration on the same basis.

**¶10** Husband argues the Kiowa property interest was not acquired during the marriage; he claims the community deed merely changed his status from "beneficial" owner to "record" owner. *See City of Phoenix v. State ex rel. Harless*, 60 Ariz. 369, 377 (1943) (stating that vendee under contract for sale of real property was to be regarded as the owner within the meaning of tax exemption statute); *see also Junker v. Union High School Dist.*, 73 Ariz. 20, 22 (1951) (applying *State ex rel. Harless* to grant vendee, as property owner, right to vote on bond issues or special assessments in bond elections).

**¶11** Generally, the creation of a trust involves the present transfer of equitable property interests in the trust to the beneficiaries. *In re Matter of Estate and Trust of Pilafas*, 172 Ariz. 207, 210 (App. 1992). These interests cannot be taken from the beneficiaries except in accordance with the provisions of the trust or by their own acts. *Id.*

**¶12** The Townsend Trust was created in 1995. The Townsend Trust obtained title to the Kiowa property in 2003. Husband's beneficial interest was as a beneficiary to the Townsend Trust, subject to distribution to Husband and Wayne upon their parents' deaths. While the property remained in the trust, the property was to be "held, administered and distributed by the trustee" in accordance with the trust provisions. The trustee was further granted the power to convey trust property and acquire or dispose of assets, including real estate. Wayne, as trustee and at Husband's request, conveyed the Kiowa property to Husband and Wife in 2007, at which point Husband and Wife acquired legal title. Husband presented no controverting evidence that his future beneficial interest in receiving a portion of the property held by the Townsend Trust upon the death of his parents actually passed by devise, descent, or gift, instead of

---

[1] For this reason, the court did not apply the presumption that a gift was made to the Wife through the creation of the trust. *See Toth v. Toth*, 190 Ariz. 218, 220 (1997) (stating that when a spouse places separate real property into a joint tenancy, there is a presumption that the spouse has made a gift of a one-half property interest to the other spouse).

conveyance, and Husband did not challenge the validity of the transfer of the property to him and Wife. Thus, as the Kiowa property was acquired and held by Husband and Wife during the marriage, it was subject to equitable division. A.R.S. § 25-211(A).

¶13 Husband next argues that the property was intended to be transferred solely to him, and only mistakenly conveyed to him and Wife as community property.

¶14 The intent of the parties to a deed is generally held to be the deed language itself, in the absence of clear and convincing evidence to the contrary. *Yano v. Yano*, 144 Ariz. 382, 384 (App. 1985). However, the court may reform the terms of an instrument to conform with the instrument's intention. *See Nationwide Res. Corp. v. Massabni*, 143 Ariz. 460, 465 (App. 1984) ("The fact that the promissory note was made out to . . . husband and wife does not preclude the trial court from determining the true status of the note."). Thus, the fact that the deed transferred the property to both Husband and Wife does not necessarily preclude the court from determining the property was Husband's sole and separate property.

¶15 On appeal, we will not reweigh the evidence, and it is peculiarly within the province of the superior court to draw a distinction between evidence that is clear and convincing and evidence that is not. *Yano*, 144 Ariz. at 384.

¶16 Both Wayne and Husband testified they never intended to give Wife an interest in the Kiowa property. Both testified that Husband had dyslexia, which prevented him from understanding certain documents. However, both also testified Husband was the party that requested the transfer, and Husband testified he believed the deed transferring the interest in the Kiowa property from the Townsend Trust to Husband and Wife was drafted in conformance with his request to transfer the property. Neither Wayne nor Husband recalled who prepared the deed and neither remembered reading it before signing it; in addition, Husband testified that he was drunk when he signed it. Husband's testimony contained contradictions, and Wayne's testimony indicated he merely signed what he was given. Wayne testified he never considered placing title solely in Husband's name. Biehn, Husband and Wife's trust attorney, testified he did not prepare the deed.

¶17 Wife testified she had no dealings with the Townsend Trust, neither was she aware that Husband was set to receive income based on an interest in the Kiowa property. Wife stated Husband expressed his

intention that she acquire an interest in the Kiowa property and that Husband requested Wife sign the deed. Wife denied instructing Wayne to draft the deed, and had no knowledge of the manner in which the property was conveyed.

¶18 In the Decree, the court found Husband "failed to prove by clear and convincing evidence that the parties intended the Kiowa property to remain separate." The record fully supports this finding. The deed conveyed the property as community property, was signed by Wayne, as trustee, and received by Husband and Wife. While Wayne and Husband testified they never intended to grant Wife an interest in the property, Wife testified to the opposite. All parties agreed the deed was prepared at Husband's request, and Husband believed it comported with his wishes. We agree that Husband failed to present clear and convincing evidence negating the express language of the deed that the property be Husband's and Wife's community property.

¶19 Husband cites *Porter v. Porter*, 67 Ariz. 273, 284-85 (1948), and further argues the superior court's decision ignored trust law as it applies to a resulting/constructive trust; however, as discussed above, the presumptions of gift do not apply, as they did in *Porter*, because the property was conveyed for consideration from the parents' trust to Husband and Wife as community property.

¶20 Imposition of a constructive trust is an equitable remedy that prevents one party from being unjustly enriched at the expense of another. *Turley v. Ethington*, 213 Ariz. 640, 643, ¶ 8 (App. 2006). A court may impose a constructive trust when it finds that title has been wrongfully obtained through fraud, misrepresentation, undue influence, duress, or other means, which would render it unconscionable for the holder of legal title to continue to retain its beneficial interest. *Id.* at ¶ 9.

¶21 No imposition of a constructive trust is required here. The court found the Decree's allocation of the real and personal property was fair and equitable, and particularly as it applied to the Kiowa property, found the division equitable as "consistent with an allocation of community property and debts – [Wife] to get the Montana house and a beneficial interest in the Kiowa property, [Husband] to get the Kiowa property and the motorhome debt." Further, Husband presented no evidence suggesting Wife wrongfully obtained title to Husband's interest in the Kiowa

property.[2]  Husband's testimony indicates that he requested the property be transferred, requested documentation be drafted comporting with his wishes, and that any mistake was that of his own making, either through ignorance or intoxication.

¶22        For the foregoing reasons, we hold the court did not err when it characterized the interest in the Kiowa property as community property and apportioned it accordingly.

II.    The Boeing Account

¶23        Husband argues the court erred when it excluded statements from Wife's deposition that the Boeing Account was to be included in the marital trust.  This error, he claims, means that the award to Wife of the Boeing Account should be vacated.

¶24        We review the superior court's admission of evidence for an abuse of discretion, and will affirm its ruling in the absence of an abuse or error and resultant prejudice.  *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996).

¶25        During cross-examination, Husband asked Wife whether she understood the language of the trust to be inclusive, and whether it therefore included her Boeing Account.  Wife agreed the language was inclusive, but did not know whether it included the Boeing Account. Husband sought to impeach Wife with previous statements she made during her deposition, in which according to Husband, Wife admitted the marital trust language included the Boeing Account.  Husband argues the court incorrectly limited his questioning by sustaining an objection to further questioning on the basis that the question had been asked and answered.  However, the record reveals, and Husband's counsel conceded at oral argument on appeal, that Wife did, in fact, answer the relevant questions.

¶26        Additionally, Husband was never precluded from arguing that the trust clearly, plainly, and simply included the Boeing Account.  We

---

[2]    Husband does argue that he requested the Kiowa property from his brother in order to include it in the trust on the condition that Wife said she would include her Boeing Account.  However, the evidence does not establish that Wife acted to convey an interest to the Kiowa property to herself, and Wife testified that she never agreed to place her Boeing Account into the trust, and that it was never a consideration.

hold the court did not err at trial or abuse its discretion when it denied Husband's motions for new trial and reconsideration.

III.     Jointly Held Montana Property

**¶27**          Husband first argues the court wrongly excluded a market study of the Montana property on the grounds it lacked foundation.

**¶28**          Husband argues the court erred because it in part ignored the less stringent admissibility rules of Arizona Rule of Family Law Procedure ("Rule") 2(B).  Rule 2(B) replaces, if no notice is filed, certain evidence rules, with a general rule stating, "relevant evidence is admissible, provided, however, that the court must exclude evidence if its probative value is outweighed by a danger of . . . [a] lack of reliability or failure to adequately and timely disclose the same."  Ariz. R. Fam. Law P. 2(B)(2).  While relaxed, these rules do not eliminate the requirement that some indication of reliability be provided.  "We will not disturb a trial court's ruling on the admissibility of evidence absent a clear abuse of discretion and resulting prejudice."  *Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, 427, ¶ 10 (App. 2003).

**¶29**          Husband had a realtor prepare a market study for valuation of the Montana property.  Husband's pretrial statement included the realtor as a witness, to testify that she completed the market analysis and valued the property between $325,000 and $340,000.  Roughly one week prior to trial, Husband disclosed to Wife that the realtor was not going to testify.  Wife then objected to use of the market study.  The court granted Wife's objection to the use of the market study, and advised Husband that "unless the proper foundation can be laid for that exhibit, that exhibit will be precluded from the trial."  Husband chose to forgo laying foundation to introduce the market study.

**¶30**          Even considering the more relaxed rules of admissibility of Rule 2, we hold the court did not abuse its discretion when it excluded the market study for lack of foundation.  Even under that standard, evidence must be "relevant" before it is admissible.  On this record, the superior court could properly conclude that, absent some foundation, the exhibit was not relevant and, therefore, was inadmissible.

**¶31**          Husband next argues the court erred when it denied his motion for relief from judgment, claiming Wife fraudulently failed to disclose water damage to the jointly held Montana Property.

¶32          We review the denial of a Rule 85 motion under an abuse of discretion standard. *See Norwest Bank (Minnesota), N.A. v. Symington*, 197 Ariz. 181, 184, ¶ 11 (App. 2000) (applying Civil Rule of Procedure 60, the civil equivalent to Rule 85). It is an abuse of discretion for the superior court to act arbitrarily or make a decision unsupported by fact or law. *Id.*

¶33          In May 2016, after the Decree issued in February 2016, Wife notified Husband that the Montana home suffered water damage and there was an insurance claim. In August 2016, Husband sought relief from judgment, pursuant to Rule 85(C)(1)(f) (for "any other reason justifying relief from the operation of the judgment.").

¶34          Husband subsequently sought to inspect the residence for purpose of evaluating the insurance claim, as well as have an appraisal completed, and claimed that Wife committed fraud by hiding the existence of damage. The court granted Husband's request to inspect the property. Husband and Wife set an inspection date in November, but a dispute arose and the inspection could not be completed. A new inspection date was set, however, neither Husband, a contractor of his choice, nor the appraiser appeared on the date the court ordered. Husband asked to reset the inspection date.

¶35          At an evidentiary hearing in February 2017, the court denied Husband's request to set a new inspection date. At the outset of the hearing, the court noted that the issues were whether there was water damage in respect to Husband's knowledge if he were to sign an insurance check, and whether Wife committed fraud or a misrepresentation in failing to disclose the water damage and subsequent restoration.

¶36          Husband argued Wife's concealment of water damage precluded Husband from presenting evidence regarding the damage, repairs and restoration, and the potential increase in value of the Montana home after the Decree was entered. Husband testified that the insurance agency was advised of water damage, at an estimated cost between $32,493.37 and $47,000, in October 2015, but that Husband was not advised of the damage until after the Decree was entered. Husband then presented evidence that Wife was charged post-Decree repairs costing roughly $50,000, reduced by $17,000 for preexisting damage, and another $15,000 was for simple dry-out services, which would not have affected home value. The insurance company notified Wife and Husband of the damage and lack of claim for loss in April 2016.

¶37        In regard to post-Decree repairs, Husband declined to sign the insurance check because he believed Wife misrepresented whether the damage repaired was due to the most current water damage, or had been preexisting, because the house had suffered other damage previously.  On cross-examination, Husband admitted: he had not been in the home since 2013; he was not aware what condition the home was in before the Decree; that said repairs did not occur until after the Decree; and that he truly and bluntly wanted to revalue the house and have a new appraisal completed.

¶38        Wife testified she believed Husband knew of the water damage.  Wife testified she was away from the home for the winter when the water damage occurred, and that her sister discovered it and claimed it was limited to the laundry room.  Wife acknowledged there was some major damage, but did not believe it would alter the value of the home.  Wife testified that she did nothing to misrepresent the value of the home, and that she was not present when the appraiser was there.  Wife testified Husband exaggerated the previous damage, but did state that Husband had done some previous repairs.  Wife further testified the insurance claim did not involve some previously known damage, and that she never attempted to include any preexisting conditions in her claim.   Wife eventually had the insurance claim check sent to just her, thereby holding Husband harmless from any allegation he participated in the disputed claim.  Wife testified the restoration entailed repairs, not improvements, and the only increase would be due to new linoleum.

¶39        After receiving exhibits and testimony, the court found there was no fraud or misrepresentation on behalf of Wife, and any potential omission by Wife did not negatively affect Husband.  The appraiser who conducted the appraisal pre-Decree did not inspect the inside of the home, and no definitive evidence was provided showing the value would have appreciated with expected restorative work, or have been depreciated at the time of the Decree based on knowledge of the damage at the time.  The court found nothing that indicated the damage to the house negatively affected the appraisal and nothing that would say the damage at the time of trial would have increased the value of the house.[3]  Husband has shown no error in these findings.

---

[3]        The court also noted that neither damage depreciating the value nor restorative work increasing the value would have affected Husband's proposed market study that was not admitted, because the market study looked only at comparable houses in the area, not the inside of the Montana property.

¶40 The court did not abuse its discretion in denying Husband's motion for relief from judgment. The evidence does not indicate that the damage negatively impacted the value of the home, nor does it show that Wife fraudulently concealed this information. Besides attempting to secure a new valuation, Husband's concern regarding insurance fraud was dispelled when Wife had the check signed over to just her, relieving Husband of potential liability for a claim based on preexisting damage.

## CONCLUSION

¶41 For the foregoing reasons, we affirm the court's Decree and denial of Husband's motion for relief from judgment.

¶42 Husband and Wife both requested costs and reasonable attorneys' fees pursuant to A.R.S. § 25-324. Husband's request for costs and attorneys' fees is denied. In the exercise of our discretion, we award Wife her costs and reasonable attorneys' fees on appeal subject to compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA